UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIX FLAGS, INC. and )<br>TIG INSURANCE COMPANY, )<br>)<br>  Plaintiffs, )<br>)<br>v. ) Civil Action No. 05-11444 NMG<br>)<br>STEADFAST INSURANCE COMPANY, )<br>)<br>  Defendant. )<br>) | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT STEADFAST INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

Defendant Steadfast Insurance Company (hereinafter "Steadfast"), pursuant to Fed. R. Civ. P. 56(c), moves for summary judgment in its favor as to all counts of Plaintiffs' Complaint. Because there are no genuine issues of material fact,[1] Steadfast is entitled to judgment as a matter of law on all counts of the Plaintiffs' Complaint. Steadfast does not owe a duty to defend or indemnify Six Flags, Inc. (hereinafter "Six Flags"). Steadfast did not violate Mass. Gen. L. ch. 93A by declining to do so with respect to the action entitled <u>Messier, et. al. vs. Six Flags, Inc., et. al.</u>, Worcester Superior Court, No. SUCV2001-01494B (the "Underlying Actions"). Likewise, Steadfast does not owe TIG Insurance Company (hereinafter "TIG") for amounts that TIG has incurred defending Six Flags in the Underlying Actions.

---

[1] The facts contained in Steadfast Insurance Company's Concise Statement of Material Facts as to which there is no Genuine Issue are admitted for the sole purpose of consideration of Steadfast's motion for summary judgment, and are not admitted for any other purpose.

## **ABBREVIATED STATEMENT OF FACTS** [2]

In or around 1998, Six Flags engaged O.D. Hopkins Associates, Inc. (hereinafter "OD Hopkins") to design, manufacture, and test a water ride named the "Blizzard River Ride" (hereinafter the "Subject Ride") for one of Six Flags' amusement parks located in Agawam, Massachusetts (hereinafter "Riverside Park").

The initial communication between Six Flags and OD Hopkins regarding the Subject Ride was a telephone call from Gary Story, the President and Chief Operating Officer at Six Flags, to James Glover, the Vice President of Sales and Marketing at OD Hopkins.  At the time of the telephone call, Mr. Story and Mr. Glover knew each other personally and had previously worked together on an amusement park ride transaction between Six Flags and OD Hopkins.  In the prior amusement park ride transaction between Six Flags and OD Hopkins, Mr. Glover had not signed a contract, letter agreement or proposal.  Following the telephone call, Mr. Glover of OD Hopkins prepared a purchase agreement, which he sent to Six Flags.  The purchase agreement was never executed.  Nevertheless, OD Hopkins began the manufacturing process regarding the Subject Ride in good faith based upon previous transactions between OD Hopkins and Six Flags.

As of August 17, 1998, OD Hopkins understood that the Subject Ride was described in a "Ride Description and Specifications" document and a "Payment Terms" document.  Each page of the Ride Description and Specifications and the Payment Terms was initialed by Jerry Pendleton, who was the President of OD Hopkins.  Mr. Glover did not have the authority to enter into a contract for OD Hopkins with Six Flags regarding the transaction for the Subject Ride. Only Jerry Pendleton could sign, on behalf of OD Hopkins, any written contract or agreement

---

[2]  A complete statement of relevant facts, including references to the record, is contained in Steadfast Insurance Company's Concise Statement of Facts as to which there is no Genuine Issue, which is filed herewith.

between Six Flags and OD Hopkins for the Subject Ride. Neither the Ride Description and Specifications nor Payment Terms were initialed by Six Flags.

On or about October 27, 1998, James Glover sent a "Fax Transmittal" to Gary Story inquiring as to the status of the Purchase Agreement/contract that OD Hopkins had sent to Six Flags in August, 1998, an executed copy of which had not been received by OD Hopkins. As of that time, OD Hopkins had performed a considerable amount of work on the Subject Ride based upon the conversation in August, 1998, but could not order outside vendor components without an executed contract.

In or around November 1998, Six Flags sent an undated, unsigned letter agreement to Mr. Glover's attention setting forth certain proposed terms for an agreement regarding the development and purchase of the Subject Ride (hereinafter "Letter Agreement Proposed By Six Flags"). The Letter Agreement Proposed By Six Flags was not executed by Six Flags, although it contained a signature line for Gary Story. The Letter Agreement Proposed By Six Flags was never executed by OD Hopkins. Under the terms of the Letter Agreement Proposed By Six Flags, Six Flags and OD Hopkins were to "agree to proceed in good faith to finalize a definitive purchase agreement relating to the [Subject] Ride ("Agreement") no later than November 30, 2005." Among the "substantive terms and conditions of development and sale of the [Subject] Ride" in the Letter Agreement Proposed By Six Flags was:

> 13. Seller will maintain a minimum of $5,000,000 (Five Million Dollars), per occurrence, of comprehensive general liability, contractual liability and products liability insurance in form and in substance and issued by insurers reasonably satisfactory to [Six Flags] at all times prior to the end of the warranty period, each of which insurance shall name [Six Flags] as an insured party.

The Letter Agreement Proposed By Six Flags was never executed by OD Hopkins.

3

On or about November 25, 1998 and in response to the Letter Agreement Proposed By Six Flags, James Glover sent a "Fax Transmittal" to the attention of Gary Story rejecting the Letter Agreement Proposed By Six Flags. Specifically, Mr. Glover wrote: "[t]here are issues within this [Letter Agreement Proposed By Six Flags] that we take exception to and are contrary to our offer dated on June 25, 1998" and that the Letter Agreement Proposed By Six Flags was "a radical departure from the manner in which we have worked in the past." Mr. Glover wrote:

> [s]ince you gave me a verbal commitment in August I have been doing an extensive amount of work on this ride based upon <u>intent</u>. The rafts are built, much of the lift and station frames completed and we are at the point that by early next week the final layout will be approved by Riverside. We need to have a signed contract, or at the very least, the deposit, so we can get outside components ordered.

Mr. Glover continued:

> [w]hile we will attempt to work in a manner that is acceptable to you, it is important to point out that within these new guidelines outlined in the [Letter Agreement Proposed By Six Flags] there are, in some cases, issues which are not acceptable and others that have direct cost implications.

Mr. Glover attached to the 11/25/1998 Fax an amended Exhibit "A," in which he proposed a "Purchase Price," "Payment Terms," and "Target Dates, which, if missed, trigger penalty payments, payable with respect to the Ride" that were materially different from those contained in the Exhibit "A" attached to the Letter Agreement Proposed By Six Flags. Mr. Glover also responded to each of the seventeen (17) numbered "substantive terms and conditions of development and sale of the [Subject] Ride" in the Letter Agreement Proposed By Six Flags, rejecting thirteen. As part of the continuing negotiations, Mr. Glover wrote that four of the terms and conditions, including No. 13, were acceptable. Finally, Mr. Glover wrote: "[w]e will work in good faith to conclude an acceptable Purchase Agreement, but I respectfully request the deposit to be sent so the current ship dates can be met."

4

Six Flags did not respond in writing to the 11/25/1998 Fax.  No contract, letter agreement, purchase agreement, or proposal regarding the transaction for the Subject Ride was executed by Six Flags and OD Hopkins.

In or around June, 1999, OD Hopkins completed the construction and installation of the Subject Ride at Riverside Park.  In or around July, 2001, a complaint was filed in the Underlying Actions.  The Plaintiffs in the Underlying Actions sought damages from, among others, Six Flags and OD Hopkins, related to an alleged near drowning incident that occurred on or about August 7, 1999 involving the Subject Ride.

Steadfast Insurance Company ("Steadfast") issued Policy No. SCO 3776164-00 to O.D. Hopkins Associates, Inc. for the policy period July 1, 1999 to July 1, 2000 with per occurrence policy limits of $5 million ("Steadfast Policy").  Endorsement 11 of the Steadfast Policy states:

> [i]t is agreed that Section II. Who Is An Insured is amended to include any person or organization (herein referred to as "vendor") as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products …

Endorsement 12 of the Steadfast Policy states:

> A.  Who is an Insured (Section II) is amended to include as an insured any person or organization for whom you perform operations when you and such person have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of "your work" performed for that insured.

## ARGUMENT

Given the undisputed facts, Six Flags and TIG are unable to prove as a matter of law that Six Flags was an additional insured under the Steadfast Policy.  Six Flags contends that it is an additional insured under the Steadfast Policy pursuant to Endorsement 11 and/or 12.  However, Six Flags did not distribute or sell OD Hopkins' products, and therefore was not a vendor under

5

Endorsement 11. OD Hopkins and Six Flags did not "agree in writing in a contract or agreement" to add Six Flags as an additional insured to the Steadfast Policy under Endorsement 12. Accordingly, Steadfast owes no duty to defend or indemnify Six Flags. Steadfast did not violate Mass. Gen. L. ch. 93A by declining to do so with respect to Underlying Actions. Likewise, Steadfast does not owe TIG for amounts that TIG has incurred defending Six Flags in the Underlying Actions.

### I.     Summary Judgment Standard

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 50 (1st Cir. 2000); Celotex Corp. v. Catrett, 477 U.S. 317, 3222, 106 S.Ct. 2548 (1986). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).

### II.    Six Flags was Not An Additional Insured Endorsement 12 of the Steadfast Policy.

In order to establish that it is an additional insured to the Steadfast Policy under Endorsement 12, Six Flags must prove that OD Hopkins and Six Flags "have agreed in writing in a contract or agreement that [Six Flags] be added as an additional insured on [OD Hopkins] policy." The sole basis for Six Flags' assertion that there was such a written contract or agreement is the two letters exchanged between Gary Story of Six Flags and James Glover of OD Hopkins. These letters were referenced in Paragraphs 11, 12 and 13 of the Complaint, and were attached to the complaint as Exhibits 1 and 2. Six Flags does not contend that there was

any other written contract or agreement. It is <u>undisputed</u> that no contract, letter agreement, purchase agreement, proposal or other writing regarding the transaction for the Subject Ride was ever executed by Six Flags and OD Hopkins.

As a preliminary matter, the Court must address the issue of which state's substantive law will apply in the present matter. Four States have at least an arguable interest in the present case, Massachusetts, New Hampshire, New York and Oklahoma. Massachusetts is the where the Subject Ride was delivered and installed at Six Flags' Riverside Park. In addition, Massachusetts is where the underlying tort, for which Six Flags is seeking insurance coverage from Steadfast, occurred. O.D. Hopkins is a New Hampshire corporation, while Six Flags is an Oklahoma corporation. In addition, the unexecuted Letter Agreement Proposed By Six Flags contained a choice of law provision requiring application of New York law.

### I.A. The Court Must Apply Massachusetts' Choice of Law Rules in this Action, as Jurisdiction is Based upon Diversity.

This litigation was commenced in this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. As such, the Court must apply the choice-of-law rules of Massachusetts in order to determine which state's substantive laws will apply. *See* <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 491 (1941); and <u>Reicher v. Berkshire Life Ins. Co. of America</u>, 360 F.3d 1 (1st Cir. 2004).

### I.B. Massachusetts Has Rejected the Traditional Lex Loci Rule and Adopted a Functional Choice of Law Approach Regarding Contract Claims

In <u>Bushkin Associates, Inc. v. Raytheon Company</u>, 473 N.E.2d 662, 668 (Mass. 1985), the Supreme Judicial Court announced a "functional choice of law approach" regarding contract claims, having rejected the traditional lex loci rule in <u>Choate, Hall & Stewart v. SCA Services, Inc.</u>, 392 N.E.2d 1045, 1048-9 (Mass. 1979). The Court enumerated from several sources a list

of factors to consider when determining the state with the most significant relationship to the transaction and the parties, including:

(1) the place of contracting;
(2) the place of negotiation of the contract;
(3) the place of performance;
(4) the location of the subject matter of the contract;
(5) the domicile, residence, nationality, place of incorporation, and place of business of the parties;
(6) the needs of the interstate and international systems;
(7) the relevant policies of the forum;
(8) the relevant policies of other interested states and the relative interests of those other states in the determination of the particular issue;
(9) the protection of justified expectations;
(10) the basic policies underlying the particular field of law;
(11) certainty, predictability and uniformity of result;
(12) ease in the determination and application of the law to be applied;
(13) predictability of result;
(14) maintenance of interstate and international order;
(15) simplification of the judicial task;
(16) advancement of the forum's government interests; and
(17) application of the better rule of law.

Bushkin Associates, Inc., *supra* at 669. The Court further explained that the determination was not to be made by simply adding up the number of contacts of reach interested state, and that no simple and objective test could provide an acceptable choice-of-law answer. Id. at 669-70.

> **I.C.    Regardless of whether Massachusetts, New Hampshire, Oklahoma or New York law applies, the rule is the same: a counteroffer operates as a rejection of an original offer, because there is no mutual assent or meeting of the minds.**

Massachusetts' "functional choice of law approach" is not easily applied to situations like the present case. However, as stated in Reicher v. Berkshire Life Ins. Co. of America, *supra* at 4, "[t]he first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive law of the interested jurisdictions…" "[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court

need not decide which body of law controls." Okmyansky v. Herbalife International of America, Inc., 415 F.3d 154, 158 (1st Cir. 2005).

The law in Massachusetts, New Hampshire, New York and Oklahoma is the same: a counteroffer operates as a rejection of an original offer, because there is no mutual assent or meeting of the minds when acceptance of an offer is conditioned upon additional or different terms.

## MASSACHUSETTS

In Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 966 n. 6 (Mass. 2004), the court noted that "[u]nder fundamental principles of contract law, a counteroffer operates as a rejection of the original offer." (citing 1 S. Williston, Contracts § 5:3, at 629 (4th ed. 1990)). In Ritchie v. Shay, 1991 Mass.App.Div. 42, 1991 WL 51307 (Mass. App. Div. 1991), the court upheld a finding for the defendant regarding plaintiff's claim for breach of contract. The court explained that:

> plaintiffs' purported acceptance of the purchase and sales agreement was materially and substantially at variance with the terms of the offer, and, as such, operates as a rejection of the original offer and a counteroffer, which if not accepted does not ripen into a completed contract. (citing Moss v. Old Colony Trust Co., 140 N.E. 803, 806-7 (Mass. 1923) and Peretz v. Watson, 324 N.E.2d 908, 909 (Mass. App. Ct. 1975).

In Peretz, *supra*, the court affirmed the trial court's jury instructions that "a purported acceptance which varies from the terms of the offer in any material respect is in effect a rejection [citing Moss, *supra*], and that an offer once rejected cannot thereafter be revived by an attempted acceptance thereof."

NEW HAMPSHIRE

In Clark v. Mitchell, 937 F.Supp. 110, 113 (D. N.H. 1996), the court applied New Hampshire law of contracts, and held that:

> [b]efore an enforceable contract can arise, there must be a mutual meeting of the minds. That is, the parties must have agreed to the same terms. (citations omitted). There is no meeting of the minds where the acceptance of an offer is conditional. (citations omitted). Accordingly, where acceptance is conditioned upon additional material terms that were not offered, there is no meeting of the minds and thus, there is no contract. (citations omitted).

The court also recognized that when a party accepts part of an offer, but rejects other parts, there is no agreement between the parties even as to those parts nominally "accepted." Id. Likewise, in Arapage v. Odell, 327 A.2d 717, 718 (N.H. 1974), the court explained that, "[f]undamental in the making of a valid contract by offer and acceptance is the requirement that an offer be accepted unconditionally." Where the defendant accepted the monetary part of the plaintiff's settlement offer but specifically rejected the cooperation provisions, the court held that there was a rejection not an acceptance of plaintiff's offer. Although the defendant's actions could have been considered a counter offer, such was not accepted by plaintiff. "Accordingly, there is no agreement between the parties to be enforced …" Id.

NEW YORK

Under New York law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Robison v. Sweeney, 753 N.Y.S.2d 583, 586 (N.Y. App. Div. 2003). In addition, "[i]t is a fundamental principal of contract law that a valid acceptance must comply with the terms of the offer … and, if qualified with conditions it is equivalent to a rejection and counteroffer." Id.

In <u>Robison</u> the court reversed the grant of summary judgment to a purported buyer of residential property, who filed suit seeking specific performance. The buyer had sent signed offer to the seller for the property and "all furnishings and furniture, lawn care equipment, watercraft." The seller signed the offer, but added the words "listings of furnishing will follow" under the heading "items excluded from the sale." Upon receipt of the altered offer, the buyer essentially made a counteroffer, increasing the purchase price, listing items of personal property included in the sale and requiring the seller to make two repairs to the home. The next day, the buyer made a second counteroffer containing a more detailed list of fixtures and furniture to be included in the sale, and modifying the terms regarding the required repairs.

The court held that "a jury could find that by varying the terms of the offer, the buyers indicated an intent to continue to negotiate the essential terms of the proposed agreement, which raises issues as to whether they intended to be bound by the contract of sale." <u>Id.</u> The court held that there was a genuine issue of material fact as to "whether the buyers and sellers had a 'meeting of the minds' regarding the essential terms of the contract." <u>Id.</u>

OKLAHOMA

As provided by Oklahoma statute, "[c]onsent is not mutual unless the parties all agree upon the same thing in the same sense." OKLA. STAT. 15, § 66. "[A]n acceptance must be absolute and unqualified, or must include in itself an acceptance of that character, which the proposer can separate from the rest, and which will include the person accepting. A qualified acceptance is a new proposal." OKLA. STAT. 15, § 71.

As explained in <u>In re Commercial Financial Services, Inc.</u>, 294 B.R. 164 (N.D. Okla. 2003), "[a]ttaching additional conditions to an offer constitutes a counteroffer." "A counteroffer constitutes a rejection of the offer therefore made by the other party to the transaction." <u>Young</u>

11

v. Roller, 201 P.2d 793, 796 (Okla. 1949).  If the counteroffer is not accepted, no contract exists between the parties.  Id.

> **I.D.    As a matter of law, OD Hopkins and Six Flags have not "agreed in writing in a contract or agreement" to add Six Flags as an additional insured to the Steadfast Policy.**

The Letter Agreement Proposed By Six Flags and Glover's November 25, 1998 fax, especially when considered in the context of the undisputed facts, do not constitute a written contract or agreement between Six Flags and OD Hopkins, as a matter of law.  Rather, the letters were part of ongoing negotiations between the two parties that were never consummated in writing.  OD Hopkins acted in good faith throughout the transaction; designing, manufacturing, and installing the Subject Ride without a written contract or agreement based upon the parties' previous business relationship.  Based upon the parties' previous business dealings, OD Hopkins sent the first written proposal to Six Flags in August, 1998, which included the Ride Description and Specifications and Payment Terms initialed by Jerry Pendleton.  This proposal was rejected by Six Flags, which sent an unsigned counteroffer in the form of the Letter Agreement Proposed By Six Flags.  OD Hopkins rejected the Letter Agreement Proposed By Six Flags through the November 25, 1998 fax from Mr. Glover, who stated that Six Flag's counteroffer was "a radical departure from the manner in which we have worked in the past."  As part of the ongoing negotiations, Mr. Glover suggested changes to thirteen of the seventeen numbered "substantive terms and conditions of development and sale of the [Subject] Ride" in the Letter Agreement Proposed By Six Flags.  Mr. Glover also proposed a different "Purchase Price," "Payment Terms," and "Target Dates, which, if missed, trigger penalty payments, payable with respect to the Ride" in an attached amended Exhibit "A."

Most importantly, Mr. Glover's letter did not constitute a counteroffer, as he specifically

qualified his responses by stating that, "[w]e will work in good faith to conclude an acceptable Purchase Agreement." Mr. Glover did not sign the contract, letter agreement or proposal with respect to the previous amusement park ride transactions between Six Flags and OD Hopkins, through which he developed a relationship with Mr. Story. If there has been a written contract or agreement between Six Flags and OD Hopkins for the Subject Ride, Jerry Pendleton would have signed for OD Hopkins as President. Even if Mr. Glover's fax of November 25, 1998 did constitute a counteroffer, Six Flags did not respond in writing, such that there was no written contract or agreement as required by Endorsement 12 of the Steadfast Policy.

Accordingly, Six Flags can not establish that it was an additional insured under Endorsement 12 of the Steadfast Policy, and summary judgment should be entered in favor of Steadfast.

**III.     Six Flags was Not An Additional Insured Endorsement 11 of the Steadfast Policy.**

In order to establish that it is an additional insured to the Steadfast Policy under Endorsement 11, Six Flags must prove that it was a vendor "with respect to the distribution or sale in the regular course of [its] business of [OD Hopkins] products." With respect to insurance coverage for the Underlying Actions, Six Flags must prove that it distributed or sold the Subject Ride in the regular course of its business. It is undisputed that OD Hopkins designed, manufactured, and installed the Subject Ride at Six Flags' amusement park located in Agawam, Massachusetts. However, Six Flags did not distribute or sell the Subject Ride (or any other OD Hopkins product) to anyone, much less to the plaintiffs in the Underlying Actions.

As stated by the court in <u>Sears, Roebuck and Co. v. Reliance Ins. Co.</u>, 654 F.2d 494, 500 (7th Cir. 1981), "the purpose of extending products liability coverage by vendor's endorsement is to encourage vendors to buy and sell the products of the insured." It is undisputed that Six Flags

13

did not sell any OD Hopkins' product to anyone in the regular course of its business. Likewise, Six Flags did not distribute any OD Hopkins' product to anyone in the regular course of its business.

Neither "distribution" nor "sale" is defined in the Steadfast Policy. In <u>Makrigiannis v. Nintendo of America, Inc.</u>, 815 N.E.2d 1066 (Mass. 2004), the court was required to interpret a vendor's endorsement in a liability insurance policy in which the terms "distribution" and "sale" were not defined. Citing Webster's dictionary, the court stated that "'[d]istribution' can be defined as 'the marketing or merchandising of commodities." <u>Id.</u> at 678. Likewise, "'sale' can be defined as the 'opportunity of selling or being sold,' and 'sales' as 'operations and activities involved in promoting and selling goods or services.'" <u>Id.</u> at 678-9. In <u>Makrigiannis</u>, the court held that the retail store was a vendor with respect to a video game display that fell and injured a store patron, even though the display was not for resale to the general public. <u>Id.</u> at 679. The court held that the display was "for promotional purposes and thus part of the operations and activities involved in promoting and selling [video games]." <u>Id.</u>

In the present case, Six Flags did not sell or distribute any OD Hopkins product to the patrons at Riverside Park. To the extent that Six Flags asserts that it distributed the Subject Ride to the patrons at Riverside Park by offering its patrons the opportunity to use the ride, such argument is unpersuasive. Six Flags was no more a distributor of the Subject Ride than it was a distributor of the parking lots, bathroom fixtures, and park benches at Riverside Park.

Accordingly, Six Flags can not establish that it was an additional insured under Endorsement 12 of the Steadfast Policy, and summary judgment should be entered in favor of Steadfast.

## CONCLUSION

For the foregoing reasons, Defendant Steadfast Insurance Company respectfully requests that this Honorable Court take the following actions:

(1)　grant summary judgment in favor of Steadfast as to all counts of the Plaintiffs' Complaint;

(2)　enter judgment in favor of Steadfast; and

(3)　grant such other and further relief as this Court deems appropriate.

                **STEADFAST INSURANCE COMPANY**,
                By its attorneys,

                /s/ Eric C. Hipp
                Peter G. Hermes, BBO No. 231840
                Eric C. Hipp, BBO No. 642658
                HERMES, NETBURN, O'CONNOR
                    & SPEARING, P.C.
                265 Franklin Street, Seventh Floor
                Boston, MA  02110-3113
                (617) 728-0050 – Tel.
                (617) 728-0052 – Fax

Dated:  April 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 20, 2006,

                /s/ Eric C. Hipp
                Eric C. Hipp

G:\ECH\Zurich\OH D Hopkins\Pleadings\Motion fo rSummary Judgment.doc