UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**SIX FLAGS, INC.** and             )
**TIG INSURANCE COMPANY,**          )
                                    )
      **Plaintiffs,**           )
                                    )
v.                                  )   Civil Action No. 05-11444 NMG
                                    )
**STEADFAST INSURANCE COMPANY,**    )
                                    )
      **Defendant.**            )
_____ )

**DEFENDANT STEADFAST INSURANCE COMPANY'S
CONCISE STATEMENT OF MATERIAL FACTS
TO WHICH THERE IS NO GENUINE ISSUE**

    Defendant Steadfast Insurance Company (hereinafter "Steadfast"), pursuant to LR 56.1, provides the following concise statement of the material facts of record to which it contends there is no genuine issue to be tried.[1]

    1.    In or around 1998, Plaintiff Six Flags, Inc. (hereinafter "Six Flags") engaged O.D. Hopkins Associates, Inc. (hereinafter "OD Hopkins") to design, manufacture, and test a water ride named the "Blizzard River Ride" (hereinafter the "Subject Ride") for one of Six Flags' amusement parks located in Agawam, Massachusetts (hereinafter "Riverside Park"). See Complaint, at ¶ 10.

    2.    The initial communication between Six Flags and OD Hopkins regarding the Subject Ride was a telephone call from Gary Story, the President and Chief Operating Officer at Six Flags, to James Glover, the Vice President of Sales and Marketing at OD Hopkins. See

---

[1] The facts contained herein are admitted by Steadfast for the sole purpose of consideration of Steadfast's Motion for Summary Judgment, which is filed herewith, and are not admitted for any other purpose.

Deposition of James F. Glover (hereinafter "Depo. of Glover"), p. 55/ l. 23 – p. 56/ l. 2, and p. 68/ l. 11-25.[2]

3. At the time of the telephone call, Mr. Story and Mr. Glover knew each other personally and had previously worked together on an amusement park ride transaction between Six Flags and OD Hopkins.  See Depo. of Glover, p. 56/ l. 6-16.

4. In the prior amusement park ride transaction between Six Flags and OD Hopkins, Mr. Glover had not signed a contract, letter agreement or proposal.  See Depo. of Glover, p. 56/ l. 17-25.

5. Following the telephone call, Mr. Glover of OD Hopkins prepared a purchase agreement, which he sent to Six Flags.  The purchase agreement was never executed.  See Depo. of Glover, p. 67/ l. 14-24 and p. 68/ l. 21 – p. 69/ l. 15.

6. Although the purchase agreement was never executed, OD Hopkins began the manufacturing process regarding the Subject Ride in good faith based upon previous transactions between OD Hopkins and Six Flags.  See Depo. of Glover, p. 63/ l. 25 – p. 64/ l. 9.

7. As of August 17, 1998, OD Hopkins understood that the Subject Ride was described in the documents entitled:

EXHIBIT "A"
O.D. Hopkins Associates, Inc.
River Raft Ride
Ride Description and Specifications
For
Riverside Park
Agawam, Massachusetts

(hereinafter the "Ride Description and Specifications") and

---

[2] Copies of all cited pages from the Depo. of Glover are attached as Exhibit 1 to the Affidavit of Peter Hermes, which is filed herewith.

EXHIBIT "B"
O.D. Hopkins Associates, Inc.
River Raft Ride
Payment Terms
For
Riverside Park
Agawam, Massachusetts

(hereinafter the "Payment Terms").  See Depo. of Glover, p. 65/ l. 3-8.

8. A true and complete copy of the Ride Description and Specifications is attached as Exhibit 2 to the Affidavit of Peter Hermes, which is filed herewith.

9. A true and complete copy of the Payment Terms is attached as Exhibit 3 to the Affidavit of Peter Hermes, which is filed herewith.

10. Each page of the Ride Description and Specifications and the Payment Terms was initialed by Jerry Pendleton, who was the President of OD Hopkins.  See Ride Description and Specifications; Payment Terms; and Depo. of Glover, p. 95/ l. 21-25, and p. 91/ l. 6-13.

11. Neither the Ride Description and Specifications nor Payment Terms were initialed by Six Flags.  See Ride Description and Specifications; and Payment Terms

12. On or about October 27, 1998, James Glover sent a "Fax Transmittal" ("10/27/1998 Fax") to Gary Story, a true and complete copy of which is attached as Exhibit 4 to the Affidavit of Peter Hermes, which is filed herewith.

13. In 10/27/1998 Fax, Mr. Glover inquired as to the status of the Purchase Agreement/ contract that OD Hopkins had sent to Six Flags in August, 1998, an executed copy of which had not been received by OD Hopkins.  See 10/27/1998 Fax; and Depo. of Glover p. 68/ l. 2 – p. 69/ l. 20.  As of that time, OD Hopkins had performed a considerable amount of work on the Subject Ride based upon the conversation in August, 1998, but could not order outside vendor components without an executed contract.  Id.

14. In or around November 1998, Six Flags sent an undated letter agreement to the attention of James Glover at OD Hopkins setting forth certain proposed terms for an agreement regarding the development and purchase of the Subject Ride (hereinafter "Letter Agreement Proposed By Six Flags"). See Complaint, at ¶ 11.

15. A true and complete copy of the Letter Agreement Proposed By Six Flags is attached as Exhibit 5 to the Affidavit of Peter Hermes, which is filed herewith.

16. The Letter Agreement Proposed By Six Flags was not executed by Six Flags, although it contained a signature line for Gary Story. See Letter Agreement Proposed By Six Flags.

17. The Letter Agreement Proposed By Six Flags was never executed by of OD Hopkins. See Letter Agreement Proposed By Six Flags.

18. Under the terms of Letter Agreement Proposed By Six Flags, Six Flags and OD Hopkins were to "agree to proceed in good faith to finalize a definitive purchase agreement relating to the [Subject] Ride ("Agreement") no later than November 30, 2005." See Letter Agreement Proposed By Six Flags.

19. Among the "substantive terms and conditions of development and sale of the [Subject] Ride" in the Letter Agreement Proposed By Six Flags was:

> 13. Seller will maintain a minimum of $5,000,000 (Five Million Dollars), per occurrence, of comprehensive general liability, contractual liability and products liability insurance in form and in substance and issued by insurers reasonably satisfactory to [Six Flags] at all times prior to the end of the warranty period, each of which insurance shall name [Six Flags] as an insured party.

See Letter Agreement Proposed By Six Flags.

20.     On or about November 25, 1998 and in response to the Letter Agreement Proposed By Six Flags, James Glover sent a "Fax Transmittal" ("11/25/1998 Fax") to the attention of Gary Story.  See Complaint, at ¶ 13.

21.     A true and complete copy of the 11/25/1998 Fax is attached as Exhibit 6 to the Affidavit of Peter Hermes, which is filed herewith.

22.     In the 11/25/1998 fax, Mr. Glover rejected the Letter Agreement Proposed By Six Flags, writing that "[t]here are issues within this [Letter Agreement Proposed By Six Flags] that we take exception to and are contrary to our offer dated on June 25, 1998" and that the Letter Agreement Proposed By Six Flags was "a radical departure from the manner in which we have worked in the past."  See 11/25/1998 Fax; and see Depo. of Glover, p. 76/ l. 2 – 5.

23.     In the 11/25/1998 Fax, Mr. Glover wrote: "[s]ince you gave me a verbal commitment in August I have been doing an extensive amount of work on this ride based upon intent.  The rafts are built, much of the lift and station frames completed and we are at the point that by early next week the final layout will be approved by Riverside.  We need to have a signed contract, or at the very least, the deposit, so we can get outside components ordered."  See 11/25/1998 Fax.

24.     In the 11/25/1998 Fax, Mr. Glover wrote: "[w]hile we will attempt to work in a manner that is acceptable to you, it is important to point out that within these new guidelines outlined in the [Letter Agreement Proposed By Six Flags] there are, in some cases, issues which are not acceptable and others that have direct cost implications."  See 11/25/1998 Fax.

25.     In the 11/25/1998 Fax, Mr. Glover responded to each of the seventeen (17) numbered "substantive terms and conditions of development and sale of the [Subject] Ride" in the Letter Agreement Proposed By Six Flags.  See 11/25/1998 Fax.  Specifically, Mr. Glover rejected

5

thirteen of the seventeen terms and conditions. Id. As part of the continuing negotiations, Mr. Glover stated that four of the terms and conditions, including No. 13, were acceptable. See 11/25/1998 Fax; and see Depo. of Glover, p. 88/ l. 2 – p. 89/ l. 15.

26.	Mr. Glover understood that "in negotiations, everything is continually changing until something is finalized." See Depo. of Glover, p. 84/ l. 20 – p. 85/ l. 2.

27.	Mr. Glover attached to the 11/25/1998 Fax an amended Exhibit "A," in which he proposed a "Purchase Price," "Payment Terms," and "Target Dates, which, if missed, trigger penalty payments, payable with respect to the Ride" that were materially different from those contained in the Exhibit "A" attached to the Letter Agreement Proposed By Six Flags. See Letter Agreement Proposed By Six Flags; and see 11/25/1998 Fax.

28.	In the 11/25/1998 fax, Mr. Glover stated that, "[w]e will work in good faith to conclude an acceptable Purchase Agreement, but I respectfully request the deposit to be sent so the current ship dates can be met." See 11/25/1998 Fax.

29.	Six Flags did not respond in writing to the 11/25/1998 Fax.

30.	No contract, letter agreement, purchase agreement, or proposal regarding the transaction for the Subject Ride was executed by Six Flags and OD Hopkins. See Depo. of Glover, p. 92/ l. 10 – 14.

31.	Mr. Glover was never given a signed contract regarding the transaction for the Subject Ride. See Depo. of Glover, p. 69/ l. 13 – 15.

32.	Mr. Glover was the point person for OD Hopkins regarding the transaction for the Subject Ride. See Depo. of Glover, p. 70/ l. 17-22.

33.	Mr. Glover did not have the authority to enter into a contract for OD Hopkins with Six Flags regarding the transaction for the Subject Ride. See Depo. of Glover, p. 94/ l. 17 – 21.

34.    If there had been a final agreement between Six Flags and OD Hopkins for the Subject Ride, Jerry Pendleton would have signed for OD Hopkins.  See Depo. of Glover, p. 96/ l. 1 – 7.

35.    In or around June, 1999, OD Hopkins completed the construction and installation of the Subject Ride at Riverside Park.  See Complaint, at ¶ 14.

36.    In or around July, 2001, a complaint was filed in the action entitled Messier, et. al. vs. Six Flags, Inc., et. al., Worcester Superior Court, No. SUCV2001-01494B (the "Underlying Actions").  See Complaint, at ¶ 15.

37.    The Plaintiffs in the Underlying Actions sought damages from, among others, Six Flags and OD Hopkins, related to an alleged near drowning incident that occurred on or about August 7, 1999 involving the Subject Ride.  See Complaint, at ¶ 16.

38.    Steadfast Insurance Company ("Steadfast") issued Policy No. SCO 3776164-00 to O.D. Hopkins Associates, Inc. for the policy period July 1, 1999 to July 1, 2000 with per occurrence policy limits of $5 million ("Steadfast Policy").  See Answer, at ¶ 7.

39.    A true and complete copy of the Steadfast Policy is attached as Exhibit 7 to the Affidavit of Peter Hermes, which is filed herewith.

40.    As provided in Endorsement 11 of the Steadfast Policy, "[i]t is agreed that Section II. Who Is An Insured is amended to include any person or organization (herein referred to as "vendor") as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products …"  See Steadfast Policy.

41.    As provided in Endorsement 12 of the Steadfast Policy, "A.  Who is an Insured (Section II) is amended to include as an insured any person or organization for whom you perform operations when you and such person have agreed in writing in a contract or agreement that such

person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of "your work" performed for that insured."  <u>See</u> Steadfast Policy.

                              **STEADFAST INSURANCE COMPANY**,
                              By its attorneys,

                              /s/ Eric C. Hipp
                              Peter G. Hermes, BBO No. 231840
                              Eric C. Hipp, BBO No. 642658
                              HERMES, NETBURN, O'CONNOR
                                  & SPEARING, P.C.
                              265 Franklin Street, Seventh Floor
                              Boston, MA  02110-3113
                              (617) 728-0050 – Tel.
                              (617) 728-0052 – Fax

Dated:  April 20, 2006

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 20, 2006,

                              /s/ Eric C. Hipp
                              Eric C. Hipp

G:\ECH\Zurich\OH D Hopkins\Pleadings\Concise Statement of Material Facts.doc