UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SIX FLAGS, INC., and TIG INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> STEADFAST INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO. 05-11444 NMG

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to LR 56.1 Plaintiffs Six Flags, Inc. ("Six Flags") and TIG Insurance Company ("TIG"), hereby respond to Defendant Steadfast Insurance Company's Concise Statement of Material Facts and submit Additional Material Facts To Which There Is No Genuine Issue In Support Of Their Cross-Motion For Summary Judgment as follows:[1]

1. Agreed.

2. Agreed.

3. Disputed. (Affidavit of Gary Story,¶ 3)

4. Agreed

5. Agreed, to the extent "executed" means "signed."

6. Agreed.

7. Agreed.

---

[1] The facts herein are admitted by the Plaintiffs solely for consideration of Steadfast's Motion for Summary Judgment and the Plaintiffs' Cross-Motion for Partial Summary Judgment.

8. Agreed.

9. Agreed.

10. Agreed.

11. Agreed.

12. Agreed.

13. Disputed. The November 25, 1998 fax (Exhibit 6) stated that payment of a deposit would suffice for ordering outside vendor components.

14. Agreed.

15. Agreed.

16. Agreed.

17. Agreed.

18. Agreed.

19. Agreed.

20. Agreed.

21. Agreed.

22. Dispute the assertion that Mr. Glover "rejected the Letter Agreement." The November 25 fax speaks for itself and makes clear that certain terms of the letter agreement were "accepted as written" by OD Hopkins.

23. Agreed.

24. Agreed.

25. Dispute the characterization that thirteen of the conditions were rejected. The November 25 fax speaks for itself.

26. Agreed that this is Mr. Glover's testimony concerning his own personal belief,

but disputed as an accurate statement in general in fact and law.

27. Dispute that the differences were material. The documents speak for themselves.

28. Agreed.

29. Agreed.

30. Agreed to the extent that "executed" connotes a document, signed by both parties. However, the November 25 fax was executed by OD Hopkins, and when combined with the letter from Six Flags, represents an agreement on some terms executed separately by both parties.

31. Disputed. The November 25 fax was a signed agreement regarding aspects of the transaction and a signed counter-proposal as to others that was later accepted by Six Flags.

32. Agreed.

33. Disputed. Please see additional material facts set forth below in Paragraphs 43-46, 48-50, 54-55, 57-60, 65-67, describing the extent of Mr. Glover's involvement and authority with respect to the sale of the subject ride.

34. Disputed. The cited extract of Mr. Glover's deposition merely states that he "anticipated" that Mr. Pendleton's signature would be on a final agreement. Moreover, see paragraphs 55-69, establishing that there was a final agreement to build and pay for the subject ride which was fully performed by the parties.

35. Agreed.

36. Agreed.

37. Agreed to the extent that "among others" refers to Six Flags' employees and related entities.

3

38. Agreed.

39. Agreed.

40. Agreed.

41. Agreed.

**Plaintiffs' Concise Statement of Additional Material Facts In Support of Their Cross-Motion for Summary Judgment**

42. Beginning in 1985, Six Flags contracted with O.D. Hopkins Associates, Inc. ("OD Hopkins") to construct rides for its amusement parks (Pl. Exhibit 1, Deposition of Pendleton at 23).

43. Glover was the third highest person at OD Hopkins in 1998 and he reported directly to Jerry Pendleton (Pl. Exhibit 3, Deposition of Glover at 37; Pl. Exhibit 2, Deposition of Smith at 21).

44. Pendleton permitted Glover to represent himself to the general public as vice president of sales and marketing for OD Hopkins (Pl. Exhibit 2, Deposition of Smith at 66-67; Pl. Exhibit 1, Deposition of Pendleton at 162).

45. As part of his responsibilities, Glover normally engaged in correspondence between a potential buyer of a ride and OD Hopkins to clarify the points of agreement (Pl. Exhibit 2, Deposition of Smith at 65).

46. Glover was the primary representative of OD Hopkins in the negotiation and sale of the subject ride (Pl. Exhibit 3, Deposition of Glover at 73-74).

47. The river raft ride at Agawam was the first OD Hopkins project that Gary Story negotiated with Glover (Pl. Exhibit 4, Affidavit of Story, ¶ 3).

48. In all Gary Story's dealings with OD Hopkins, including for the river raft ride, the

4

OD Hopkins sales representative was the person responsible for negotiating the terms of the contract including price, delivery schedules, and insurance coverage (Pl. Exhibit 4, Affidavit of Story, ¶ 5).

49.     Glover was the only person from OD Hopkins involved in the sale of the subject ride other than some contract preparation by Pendleton (Pl. Exhibit 1, Deposition of Pendleton at 23, 30, 38).

50.     Glover and Story came to an agreement that Six Flags would buy the subject ride (Pl. Exhibit 3, Deposition of Glover at 58).

52.     The initial proposed purchase agreement sent by OD Hopkins to Six Flags had a contract price of $1,057,000 (Steadfast Exhibit 3).

53.     Pendleton had very little involvement in the river raft project as he was traveling extensively to Asia for other projects (Pl. Exhibit 1, Deposition of Pendleton at 19, 38)

54.     Glover was the only person at OD Hopkins with whom Six Flags negotiated the terms of the agreement to build the river raft ride (Pl. Exhibit 4, Affidavit of Story,¶ 7).

55.     Bradford P. Smith was Vice-President of OD Hopkins, as well as a shareholder (Pl. Exhibit 2, Deposition of Smith at 16-17).

56.     Pendleton approved the river raft project proceeding without a fully executed contract (Pl. Exhbit 2, Deposition of Smith at 34).

57.     The Letter Agreement proposed by Six Flags had a contract price of $1,057,000 (Steadfast Exhibit 5).

58.     The November 25, 1998 Fax from Glover was an attempt, within the scope of his duties and responsibilities as Vice President of Sales and Marketing, to point out what was acceptable to OD Hopkins and what was not acceptable and to clarify points of agreement (Pl.

Exhibit 2, Deposition of Smith at 66, 70-71).

59.     Glover had the authority to send the November 25, 1998 Fax (Pl. Exhibit 3, Deposition of Glover at 78).

60.     Pendleton was copied on the November 25, 1998 Fax sent by Glover (Pl. Exhibit 1, Deposition of Pendleton at 24; Steadfast Exhibit 6)

61.     Pendleton never told Glover he did not have authority to issue the November 25, 1998 Fax (Pl. Exhibit 3, Deposition of Glover at 91-92).

62.     In December 1998, Gary Story spoke with Glover and agreed to all the terms set out in the numbered paragraphs of the November 25 fax (Pl. Exhibit 4, Affidavit of Story, ¶ 9).

63.     In the December 1998 telephone conversation with Gary Story, Glover reaffirmed that OD Hopkins would comply with the insurance requirements originally set out in the Letter Agreement and accepted in the November 25 fax (Pl. Exhibit 4, Affidavit of Story, ¶ 10).

64.     Following the December 1998 telephone conversation with Glover, and in conformance with the November 25 fax, Six Flags paid a deposit to OD Hopkins for the river raft ride project at Agawam (Pl. Exhibit 4, Affidavit of Story, ¶ 11).

65.     Six Flags paid OD Hopkins on a periodic basis upon completion of various stages of the river raft ride as described in Exhibit A of the November 25 fax (Pl. Exhibit 4, Affidavit of Story, ¶ 13).

66.     Glover received commissions on the river raft ride as payments came in over 1998 and 1999 from Six Flags (Pl. Exhibit 3, Deposition of Glover at 90, 92).

67.     Six Flags was never informed by OD Hopkins that a signed contract was the only acceptable way for OD Hopkins to fulfill the agreement to build the river raft ride (Pl. Exhibit 4, Affidavit of Story, ¶ 12).

68. Jerry Pendleton, president of OD Hopkins, never rejected any of the terms of the agreement between Six Flags and OD Hopkins with respect to the river raft ride in Agawam. (Pl. Exhibit 4, Affidavit of Story, ¶ 15).

69. OD Hopkins never withdrew its agreement to name Six Flags as an additional insured or to procure a liability policy with limits of at least $5,000,000, and in fact, it did so (Pl. Exhibit 4, Affidavit of Story, ¶ 15, Steadfast Exhibit 7).

70. The complaint in the Underlying Actions alleged that that OD Hopkins failed to establish reasonable safety procedures, designed an unstable ride and failed to warn of the dangerous instability of the ride (Complaint, ¶¶ 22-24).

71. On or about April 11, 2006, the remaining claims in the Underlying Actions were settled (Pl. Exhibit 5, Memorandum of Understanding).

72. In connection with the settlement, OD Hopkins and Six Flags, as well as Steadfast and TIG, have stipulated that "none of the parties … shall take the position that the negligence of any of the Defendants in connection with the above-entitled matters is 0%." (Pl. Exhibit 5, Memorandum of Understanding).

73. During the pendency of the Underlying Actions, TIG Insurance Company assumed the defense of Six Flags in the Underlying Actions, and ultimately contributed to the settlement of the claims in the Underlying Actions (Complaint, ¶ 35).

74. Six Flags contributed to the settlement of the underlying actions.

75. Prior to the settlement, Six Flags had demanded coverage as an additional insured and Steadfast had refused to defend or indemnify Six Flags (Complaint, ¶ 31-34).

76. The "Other Insurance" provision of the TIG Policy states, in relevant part:

> This insurance is excess over any other valid and collectible insurance applying to the loss except for insurance bought specifically to apply in excess of the

Limits of Insurance shown in the declarations of this policy.

(Pl. Exhibit 6, TIG Policy).

77. The "Other Insurance" provision of the Steadfast policy states, in relevant part:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

    a.     Primary Insurance

This insurance is primary except when there is other insurance applying on a primary basis. Then b. below applies.

    b.     Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis.

(Steadfast Exhibit 7).

    Six Flags, Inc. and TIG Insurance Company
    By their attorneys

    /s/Samuel M. Furgang
    Regina E. Roman, BBO No. 426120
    Samuel M. Furgang, BBO No. 559062
    Matthew C. Welnicki, BBO No. 647104
    Sugarman, Rogers, Barshak & Cohen, P.C.
    101 Merrimac Street
    Boston, MA 02113

Dated: May 15, 2006

## CERTIFICATE OF SERVICE

I, Samuel M. Furgang, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 15, 2006.

    /s/Samuel M. Furgang
    Samuel M. Furgang

377366