UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
SIX FLAGS, INC. and                         )
TIG INSURANCE COMPANY,                      )
                                            )
       Plaintiffs,                          )
                                            )
v.                                          )  Civil Action No. 05-11444 NMG
                                            )
STEADFAST INSURANCE COMPANY,                )
                                            )
       Defendant.                           )
_____)

**AFFIDAVIT OF PETER G. HERMES PURSUANT TO FED. R. CIV. P. 56(F)
IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

1. I, Peter G. Hermes, am an attorney admitted to the bar of the Commonwealth of Massachusetts and the bar of the United States District Court for the District of Massachusetts. I represent Defendant Steadfast Insurance Company ("Steadfast"), in the above-referenced case. I have personal knowledge of the facts set forth herein.

2. In opposition to Defendant's Motion for Summary Judgment and in support of Plaintiffs' Cross-Motion for Partial Summary Judgment, Plaintiffs' filed the Affidavit of Samuel M. Furgang on or about May 15, 2006. Attached as Exhibit 4 to said affidavit was the Affidavit of Gary Story dated May 13, 2006.

3. Mr. Story was the President of Six Flags at all times relevant to the transaction between Six Flags and OD Hopkins Associates, Inc. regarding the water ride named the "Blizzard River Ride" (hereinafter the "Subject Ride"). Mr. Story was the representative of Six Flags regarding the transaction for the Subject Ride, and communicated with James Glover at OD

Hopkins. Mr. Glover was not a negotiator for OD Hopkins, but rather acted as an intermediary to facilitate the negotiations regarding the transaction for the Subject Ride.

4. The Affidavit of Gary Story contains factual allegations presented for the first time in this litigation or in the Underlying Actions.[1] Such factual allegations include a telephone conversation that allegedly occurred in December, 1998 between Mr. Story and Mr. Glover. Such telephone conversation was not alleged in Plaintiffs' Complaint or otherwise asserted until the Affidavit of Gary Story was filed on May 15, 2006. In addition, Mr. Story alleges that the Subject Ride was the first OD Hopkins project that he had negotiated with James Glover, and that the sales representatives at OD Hopkins are responsible for negotiating the terms of the contract on behalf of OD Hopkins. These allegations are in direct contradiction to the deposition testimony of James Glover, which was submitted with Steadfast's motion for summary judgment. Again, this allegation was not asserted until the Affidavit of Gary Story was filed on May 15, 2006.

5. Gary Story was not deposed during the prosecution of the Underlying Actions.

6. Steadfast was not a party in the Underlying Actions.

7. Steadfast has not had an opportunity to depose Mr. Story in the present litigation. Plaintiffs' counsel provided Mr. Story's address and telephone number for the first time by letter on Friday, June 2, 2006. Mr. Story is a resident of Edmond, Oklahoma.

8. On Monday, June 5, 2006, Steadfast's counsel noticed the deposition of Mr. Story for Friday, June 16, 2006 in Oklahoma City, Oklahoma. A deposition subpoena was prepared for Mr. Story, and promptly delivered to a process server in Oklahoma. In compliance with Fed. R.

---

[1] As described in Defendant's motion for summary judgment, the Underlying Actions are contained in the complaint was filed in or around July, 2001 in the action entitled Messier, et. al. vs. Six Flags, Inc., et. al., Worcester Superior Court, No. SUCV2001-01494B, through which the plaintiffs sought damages from, among others, Six Flags and OD Hopkins, related to an alleged near drowning incident that occurred on or about August 7, 1999 involving the Subject Ride.

2

Civ. P. 45, on June 8, 2006 the subpoena was served by delivery to Mr. Story by a person who is not a party and is not less than 18 years of age.

9. Steadfast's counsel has attempted to contact James Glover regarding the factual allegations contained in Mr. Story's affidavit. Counsel for OD Hopkins in the Underlying Actions has provided a cell phone number for Mr. Glover, but to date Steadfast's counsel has been unable to make contact and speak with Mr. Glover about the factual allegations contained in Mr. Story's affidavit. At present, Steadfast's counsel does not have a present address for Mr. Glover, and therefore can not notice his deposition.

10. Attached hereto as Exhibit 1 are copies of the portions of the Deposition of James F. Glover ("Depo. of Glover")[2] cited by Defendant Steadfast Insurance Company in Opposition to Plaintiffs' Cross-Motion for Summary Judgment.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9th DAY OF JUNE, 2006.

/s/ Peter G. Hermes
Peter G. Hermes

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 9, 2006,

/s/ Eric C. Hipp
Eric C. Hipp

G:\DOCS\ECH\Clients\Zurich\OD Hopkins 15643\Pleadings\Opp to Cross Motion for MSJ\Affidavit of Peter Hermes.doc

---

[2] The Depo. of Glover was taken in the Underlying Actions, and a complete copy of the transcript was included with Six Flags and TIG's Initial Disclosures in the present action.

3

```
                                                              1
 1              COMMONWEALTH OF MASSACHUSETTS
 2     WORCESTER, SS.           SUPERIOR COURT
                                  CIVIL ACTION NO. 011494B
 3

       ERNEST MESSIER and SUSAN
 4     MESSIER, JOHN PASCONE and
       KIMBERLY PASCONE, Individually
 5     and as Parents and Next
       Friends of JONATHAN PASCONE,
 6     ANGELICA PASCONE, GERALD PESCARO,
       and KIMBERLY PESCARO,
 7
              Plaintiffs,
 8
 9     vs.
10     SIX FLAGS, INC., RIVERSIDE PARK
       ENTERPRISES, INC., PREMIER PARKS,
11     INC., O.D. HOPKINS ASSOCIATES,
       INC., MARTIN FLORES, and CHARLES
12     FLORES,
13            Defendants.
14     _____/
15
                         - - -
16
                 DEPOSITION OF THE WITNESS
17                    JAMES F. GLOVER
                 TAKEN BY THE PLAINTIFFS
18
                         - - -
19
          1800 Centrepark Drive East
20        West Palm Beach, Florida
          Thursday, January 13, 2005
21        9:50 a.m. - 11:55 a.m.
          Before Janette P. Hert, RPR, RMR, CRR
22        and Notary Public, State of Florida
23
24     APPEARANCES on Page 2.
25
```

James J. Glover

40

1  and marketing?
2      A.  Yes, I did.
3      Q.  Between 1997 and 1999, did you have the
4  authority on behalf of O.D. Hopkins to send out
5  letters signed by yourself as the vice president
6  of sales and marketing?
7      A.  Yes.
8      Q.  Between 1997 and 1999, were you
9  compensated on a commission basis at or around the
10 range of $200,000 a year for your efforts on
11 behalf of O.D. Hopkins as a vice president of
12 sales and marketing?
13         MR. SHEEHAN:  I object to the
14 relevance.
15     Q.  (BY MR. GRACEFFA)  Okay.  You can
16 answer.
17     A.  Yes.
18     Q.  Now let's move to 1999.
19         During the calendar year 1999 -- strike
20 that.  Let's move to 1998.
21         During the calendar year 1998, did you
22 at that point in your career report to anyone
23 other than Mr. Pendleton.
24     A.  No.
25     Q.  You weren't reporting nor accountable in

1  ride, right.
2       A.  Performance of the ride, no.
3       Q.  No, not performance of the ride.
4  Getting the contract up and running, you did that
5  on behalf of O.D. Hopkins?
6            MR. SHEEHAN:  Again, objection.  There
7  was no contract.
8       Q.  (BY MR. GRACEFFA)  Were you the
9  representative of O.D. Hopkins who was dealing
10 with the expediting of the building of the ride
11 for Six Flags by O.D. Hopkins?
12           Do you want to hear that again.
13      A.  No.
14           I was not.
15      Q.  Okay.  Who else was involved in the
16 expediting of this between Six Flags and O.D.
17 Hopkins other than you?
18      A.  Your question also mentioned building.
19      Q.  Forget that.
20      A.  Okay.  So you'll repeat your question
21 then, please.
22      Q.  Okay.  Were you the person designated on
23 behalf of O.D. Hopkins who dealt with the
24 negotiations for this ride?
25      A.  I facilitated the negotiations.

James J. Glover

73

```
 1        Q.  Okay.  Well, you dealt with Six Flags;
 2   is that correct?
 3        A.  I dealt with Six Flags, correct.
 4        Q.  Okay.  Did anyone else?
 5        A.  With Six Flags directly, no.
 6        Q.  Who was the primary representative of
 7   O.D. Hopkins in the negotiations and sale of the
 8   ride?
 9        A.  I would have been.  And perhaps
10   "negotiator" is not the correct word.  I would act
11   as an intermediate, if you will.
12        Q.  Did anyone else, to the best of your
13   knowledge, Mr. Glover, speak to Mr. Story about
14   this ride in August, September, October, and
15   November other than you?
16        A.  Yes.
17        Q.  Who?
18        A.  I would imagine --
19        Q.  No, no?
20        A.  To the best of my knowledge, yes, and I
21   would imagine it would -- my guess, my
22   recollection is Jerry Pendleton.
23        Q.  All right.  I have to move to strike
24   your answer, and I want to make sure, if you have
25   a memory of that --
```

James J. Glover

74

1       A.   Okay.
2       Q.   -- then I want you to tell me, but if
3  you're guessing, then I don't think you can answer
4  the question.
5            Do you have a memory of anyone else on
6  behalf of O.D. Hopkins speaking to Mr. Story
7  between August and November of '98?
8       A.   Repeat one more time.
9       Q.   Do you have a memory, a specific memory,
10 of anyone other than yourself --
11      A.   No.
12      Q.   All right. But clearly in your mind,
13 you recall being the primary representative on
14 behalf of O.D. Hopkins dealing with Mr. Story
15 during this period of time; is that correct?
16      A.   Yes.
17      Q.   Okay. Exhibit Number 6 is the liability
18 policy which was in effect on behalf of Hopkins
19 during the time in question.
20           Did anyone from Six Flags, during the
21 negotiations or the building of the ride, ever ask
22 for a copy of the insurance policy --
23      A.   No.
24      Q.   -- from you?
25      A.   Not that I'm aware of.

78

```
 1        Q.  Okay.  Is your letter in response to the
 2   17 provisions set out in the Story letter?
 3            MR. SHEEHAN:  Objection.  Asked and
 4   answered.  He's already testified that he's not
 5   sure if Exhibit Number 5 was a response to Exhibit
 6   Number 4.
 7        Q.  (BY MR. GRACEFFA)  Okay.  Well, is it?
 8        A.  I'm not sure.
 9        Q.  The paragraphs exactly correspond, do
10   they not?
11            MR. SHEEHAN:  Objection.
12            MR. GRACEFFA:  No speaking.  You can
13   object, and I'll rephrase it.
14            MR. SHEEHAN:  Okay.  I object.
15        Q.  (BY MR. GRACEFFA)  Does your letter
16   respond to something that had been sent you by Six
17   Flags?
18        A.  Yes.
19        Q.  Okay.  And can I see it?
20        A.  (Hands document.)
21        Q.  Did you have the authority to send
22   Exhibit Number 5 on November 25th, 1998?
23        A.  Yes.
24        Q.  Okay.  This document indicates that,
25   just prior to you, Mr. Glover, going to Dallas on
```