United States District Court
District of Massachusetts

|  |  |
|---|---|
| SIX FLAGS, INC. and TIG INSURANCE COMPANY )<br><br>Plaintiffs,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY<br><br>Defendant | Civil Action No.<br>05-11444-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

The instant case involves an insurance coverage dispute. Plaintiffs Six Flags, Inc. ("Six Flags") and its insurer, TIG Insurance Company ("TIG"), have filed claims against defendant Steadfast Insurance Company ("Steadfast") for 1) failure to defend, 2) failure to indemnify, 3) subrogation/equitable contribution and 4) violation of the Massachusetts Consumer Protection Act.[1]

Currently pending before this Court is a motion of Steadfast for summary judgment on all counts, a motion of Six Flags and TIG for partial summary judgment on counts I, II and III and a motion

---

[1] The complaint misnumbers the counts, and lists the last allegation pursuant to M.G.L. c.93A as "Count V" although there is no Count IV.

of Six Flags and TIG for a protective order to quash the taking of the deposition of Gary Story.

I. **Background**

In August, 1998, Six Flags contacted O.D. Hopkins Associates, Inc. ("Hopkins"), a company that designs, manufactures and tests water rides for amusement parks, to discuss the construction of a water ride for a park in Massachusetts. Hopkins had previously designed and manufactured a ride for Six Flags. Negotiations for the project were conducted between James Glover ("Glover"), Hopkins's Vice President of Sales and Marketing, and Gary Story ("Story"), then-President of Six Flags. Following the August conversation, Glover sent a purchase agreement with specifications for the project, proposing payment terms and a price of $1,057,000. Each page of the "Ride Description and Specifications" and "Payment Terms" documents was initialed by Hopkins's President, Jerry Pendleton ("Pendleton").

Without waiting for a response from Six Flags, Hopkins began construction of the ride. On October 27, 1998, Glover sent a fax to Six Flags inquiring about the status of the August purchase agreement/contract. He explained that Hopkins had begun work on the ride but could not order outside vendor components without a written contract. Six Flags did not respond until November when

it mailed a letter agreement ("the November Letter") with 17 numbered paragraphs setting forth certain terms regarding the construction and purchase of the ride. The letter agreement included the following provision ("Paragraph 13"):

> Seller will maintain a minimum of $5,000,000 (Five Million Dollars), per occurrence, of comprehensive general liability, contractual liability and products liability insurance in form and in substance and issued by insurers reasonably satisfactory to [Six Flags] at all times prior to the end of the warranty period, each of which insurance shall name [Six Flags] as an insured party.

In a responsive fax ("the Hopkins Fax"), on which Pendleton was copied, Glover expressed concern with some of the proposed terms in the November Letter, but stated that "we will attempt to work in a manner that is acceptable to you." In an accompanying list, Glover responded to each of the 17 numbered paragraphs, commenting on 13 of them and writing "Accepted as written" with respect to the other four, including the above excerpted Paragraph 13.

Six Flags did not respond in writing to the Hopkins Fax, but remitted the deposit and continued to pay Hopkins for the construction work. The water ride was completed in June, 1999 and Hopkins obtained a liability insurance policy from Steadfast with a per-occurrence limit of $5M for the period between July 1, 1999 and July 1, 2000. The policy contained the following two endorsements:

[Endorsement 11]

It is agreed that Section II Who is an Insured is amended to include any person or organization (herein referred to as "vendor") as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products ....

[Endorsement 12]

Who is an Insured (Section II) is amended to include any person or organization for whom you perform operations when you and such person have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of "your work" performed for that insured.

In July, 2001, a complaint was filed in Worcester Superior Court against, <u>inter alia</u>, Six Flags and Hopkins. The plaintiffs in that case sought damages related to an alleged near-drowning incident involving the ride at issue in this case. Six Flags and Hopkins reached a settlement with the plaintiffs in that underlying case.

During the course of the state tort action, Steadfast rejected Six Flags's claim that it was an additional insured under Hopkins's policy, and TIG was required to defend Six Flags. The dispute in the instant case is whether Six Flags is an additional insured under the Steadfast policy obtained by Hopkins, and thus, entitled to a defense and indemnification by Steadfast. Specifically, the plaintiffs contend that Endorsements 11 and 12 amend the policy to include Six Flags as an additional insured. The interpretation of those two

-4-

endorsements is at the heart of the cross-motions for summary judgment before this Court.

## II.  **Summary Judgment Motions**

### A.  **Standard of Review**

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.    Legal Analysis**

The parties agree that there are four states with an arguable interest in the present case, but the law in all of those jurisdictions is substantially similar with respect to the legal issues at hand.  As such, the Court need not resolve the choice of law matter because no "actual conflict exists." Diomed, Inc. v. Vascular Solutions, Inc., 417 F.Supp.2d 137, 143 (D.Mass. 2006).

Insurance policies are construed under the general rules of contract interpretation.  Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000)(citations omitted).  Thus, interpretation begins with the actual language of the policies, given its plain and ordinary meaning.  Id.  Ambiguities are resolved against the insurance company which drafted the policy and in favor of the insured. Therefore, if "there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it."  GRE Ins. Group v. Metropolitan Boston Housing Partnership, Inc., 61 F.3d 79, 81 (1st Cir. 1995)(quoting Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407

Mass. 689, 700 (1990)).

### A. Endorsement 11: Vendor's Endorsement

Accordingly, the Court begins with the language of the endorsement provisions at issue. Endorsement 11 states:

> [i]t is agreed that Section II ["]Who is an Insured["] is amended to include any person or organization (herein referred to as "vendor") as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products ...

Plaintiffs contend that Six Flags falls within the definition of a "vendor" and therefore, is covered under the Steadfast policy. Steadfast summarily rejects that argument because Six Flags did not distribute or sell the water ride at issue.

Neither distribution nor sale is defined in the Steadfast insurance policy. Plaintiffs assert that while the ride itself was not distributed or sold to Six Flags patrons, the entertainment service provided by the ride was for sale and because the underlying tort claim arose out of the "sale" of the ride, Six Flags comes within the Vendor's Endorsement provision.

Both parties cite a decision by the Massachusetts Supreme Judicial Court ("the SJC"), Makrigiannis v. Nintendo of America, Inc., 442 Mass. 675 (2004), in support of their respective positions. That case involved a tort claim brought against Nintendo of America, Inc. ("Nintendo") and a retail store after an interactive display unit fell on a customer in the store. The retail store sought defense and indemnification from Nintendo's

insurer based on a vendor insurance provision. Nintendo's insurer refused arguing that the display unit, which was not for sale to the general public, did not come within the scope of the vendor's endorsement.

The relevant section of the endorsement provision in that case is virtually identical to the endorsement at issue here:

> It is agreed that the 'Persons Insured' provision is amended to include any person or organization designated before (hereinafter referred to as 'vendor') as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products ...

Id. at 678. The insurance policy, as in our case, defines neither distribution nor sale. The SJC found that the display unit qualified as a product covered by the vendor's endorsement and held that the fact that the display itself was not for sale was "irrelevant". Id. at 679.

Six Flags, just as the store in Makrigiannis, was not selling or distributing the actual product that caused injury. Although the Plaintiffs, for that reason, ask the Court to apply the SJC's holding to the case at hand, the cases are distinguishable. The plaintiff retail store in Makrigiannis was in the business of selling Nintendo products and the display unit was specifically used to further those sales. It is undisputed that the vendor insurance would have extended to any injuries caused by the Nintendo products themselves. The SJC's holding extended the Vendor's Endorsement to those items that were

-8-

integral to the sale of insured products and the Court found that the display unit was a "part of the operations and activities involved in promoting and selling [Nintendos]". Id. at 679.

In contrast, here Hopkins is simply the manufacturer of the ride, the only product that is covered by the insurance policy. The SJC's decision in Makrigiannis extended vendor's insurance coverage to non-saleable items involved in the store's sale of a product. The decision emphasized that while the display unit itself was not for sale, it promoted the selling of Nintendos, the product sold by the defendant in that case. In this case, plaintiffs cannot point to a product manufactured by Hopkins that is being sold or distributed, and thus, Endorsement 11 cannot be read to include Six Flags as an additional insured.

### B.   Endorsement 12: Additional Insured

The Court turns next to Endorsement 12 of the Steadfast insurance policy which states:

> Who is an Insured (Section II) is amended to include any person or organization for whom you perform operations when you and such person have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of "your work" performed for that insured.

The parties do not dispute that if the requirements of the endorsement were met, Six Flags, in its capacity as an organization for whom Hopkins designed and manufactured the water ride, would qualify as an additional insured. In order for the

-9-

endorsement to apply, however, Hopkins and Six Flags must "have agreed in writing in a contract or agreement that such person or organization be added as an additional insured". The parties dispute whether there was such an agreement.

First, Defendant Steadfast contends that Six Flags is not an additional insured because there was no binding contract with Hopkins for the construction of the ride. Steadfast argues that the negotiations between Six Flags and Hopkins failed to formalize into a contract and thus, Hopkins constructed the water ride under some sort of quantum meruit arrangement. With no binding contract between Six Flags and Hopkins, Steadfast contends, the parties could not have come to an "agreement" on insurance coverage.

The Court, however, disagrees with Steadfast's contention that the November Letter and the Hopkins Fax were simply "part of ongoing negotiations". While the Hopkins Fax does not itself constitute a full-blown construction contract, it, together with the parties' subsequent actions, demonstrate that they had at the very least, a binding preliminary agreement for the construction of the water ride.

The First Circuit Court of Appeals has recognized that parties can "bind themselves to a concededly incomplete agreement" and that letters of intent can become a binding contract. Fickes v. Sun Expert, Inc., 762 F.Supp. 998, 1000-1

(D.Mass. 1991)(citing <u>Gel Systems, Inc.</u> v. <u>Hyundai Engineering and Construction Co.</u>, 902 F.2d 1024 (1st Cir. 1990)). A binding preliminary contract is one that "expresses mutual commitment to a contract on agreed mutual terms that remain to be negotiated". <u>Id.</u> (quoting <u>Teachers Ins. and Annuity Assoc.</u> v. <u>Tribune Co.</u>, 670 F.Supp. 491, 498 (S.D.N.Y. 1987)(J.Leval)). The underlying principle is that while parties should be protected from the imposition of a contract by the court, it is also important that courts "enforce and preserve agreements that were intended as binding, despite a need for further documentation or further negotiation." <u>Teachers Ins.</u>, 670 F.Supp. at 497-98.

The Court finds that a binding contract existed between Six Flags and Hopkins with respect to the construction of a water ride, notwithstanding the fact that some of the terms thereof were left undecided. Nothing in the correspondences or actions of the parties indicates otherwise. There are no references in any of the correspondence that the negotiations were in jeopardy or that construction was to be delayed. On the contrary, the written exchanges indicate a clear assumption that Hopkins would successfully complete the construction and Six Flags would pay for the water ride. The Hopkins Fax does not reject, nor even threaten rejection of, the agreement to construct the water ride. Rather, it makes clear that "in order to proceed" and purchase the necessary outside vendor components, Six Flags must either

send a "signed contract, or at the very least, the deposit, so we can get outside components ordered." Soon thereafter, Six Flags remitted the deposit.

Although Steadfast makes much of the fact that Hopkins wrote "Accepted as written" with respect to only four of the 17 paragraphs in the November Letter, a closer inspection of the Hopkins Fax indicates that most of the other comments are implicit acceptances or indicative of minor discrepancies. For example,

    a.    in response to Paragraph 4, which requires that all plans be provided with "metric dimensions" and U.S. manufactured components specify "U.S. sized materials", Hopkins responds that "All of our drawings and components are U.S. sized materials";

    b.    in response to Paragraph 10, which requires that the "Ride will be of first class quality and fit and safe for its intended use", Hopkins responded that "We build our rides to the highest standard used in the amusement ride industry"; and

    c.    notably, both the November Letter and the Hopkins Fax agree that the total purchase price is $1,057,000.

Perhaps most importantly in this case, both sides evidenced an intent to be bound by the preliminary agreement by virtue of partial performance. Hopkins had already begun construction of the ride before the exchange of correspondence and, it is undisputed, that after receipt of the Hopkins Fax, Six Flags sent Hopkins the stipulated deposit and Hopkins proceeded to complete construction of the water ride. It is also undisputed that, after having sent the Hopkins Fax which stated "agreed as

-12-

written" to Paragraph 13 of the November Letter, Hopkins obtained an insurance liability policy according to its specifications.

The dispute before the Court does not, however, end with a finding that a binding agreement existed between Six Flags and Hopkins. In order for Six Flags to have been named as an additional insured, the parties must have complied with the terms of the Steadfast policy. The plain language of Endorsement 12 requires that the parties have "agreed <u>in writing</u> in a contract or agreement that [Six Flags] be added as an additional insured" (emphasis added). The phrase "be added as an additional insured" modifies and limits the required "written agreement". The endorsement does not require a written agreement between Six Flags and Hopkins for the construction of the water ride. Nor does it require that in order for there to be an additional insured, the parties must have incorporated such an agreement within an enforceable contract for the construction of the water ride itself. Such an interpretation would impermissibly write in an addendum to the plain terms of the endorsement. See <u>Trustees of Tufts Univ.</u> v. <u>Commercial Union Ins. Co.</u>, 415 Mass. 844, 849 (1993)("We read the policy as written. We are not free to revise it or change the order of the words.")(quoting <u>Cont'l Casualty Co.</u> v. <u>Gilbane Bldg. Co.</u>, 391 Mass. 143, 147 (1984)).

The endorsement clearly states that a writing is required with respect to an agreement regarding the "additional insured."

By responding in the Hopkins Fax "Accepted as written" with respect to Paragraph 13, Hopkins unequivocally agreed to the terms of that provision. Furthermore, considerations of fairness favor the plaintiffs' interpretation of Endorsement 12. There is no evidence on the record to refute the claim that Six Flags and Hopkins had every intent to be bound by the terms to which they agreed. Hopkins successfully completed the construction of the ride, Six Flags paid the initial deposit and subsequent payments, Hopkins procured the requested liability insurance with a per-occurrence limit of $5M and an endorsement that provided for an additional insured party under certain, specific circumstances.

Even if the parties entered into the required written agreement, Steadfast contends that it is invalid because Glover was not authorized to sign any agreements on behalf of Hopkins. That argument is equally unavailing. The evidence on the record indicates that even if Glover did not have actual authority from Hopkins to negotiate the transaction and agree to the insurance provision with Six Flags, he had apparent authority to act on behalf of the company.

> Apparent authority arises from:
>
> conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent.... If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.

Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 16 (1997)(internal quotation marks omitted)(citing Hudson v. Mass. Prop. Ins. Underwriting Ass'n, 386 Mass. 450, 457 (1982)). In this case, the facts are undisputed that Glover negotiated the dealings for Hopkins throughout the entire process and that, he apparently acted with the authority of the company. Glover, the Vice President of Sales & Marketing, responded to the letter agreement from Six Flags by rejecting and agreeing with the various provisions. The Hopkins Fax was copied to Pendleton, the President of Hopkins, and there is sufficient evidence on the record to indicate that Six Flags had reason to rely on Glover's authority because both his title and his actions indicate that he was authorized to act on behalf of the company.

For the foregoing reasons, the Court finds that there are no genuine issues of material fact regarding the applicability of Endorsement 12 to Six Flags. Six Flags is an additional insured under the Steadfast policy and the defendant had a duty to defend and indemnify Six Flags in the underlying tort claim. Because the underlying state tort claim was settled for less than $5M, the TIG claim is excess to the Steadfast policy and Steadfast bears the financial obligation for the defense and indemnification of Six Flags.

**ORDER**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 17) is **DENIED** and Plaintiffs' Cross Motion for Partial Summary Judgment (Docket No. 22) is **ALLOWED**. Accordingly, because the Court finds that there are no genuine issues of material fact, the Plaintiffs' Motion for a Protective Order to Quash the Deposition of Gary Story (Docket No. 31) is **DENIED** as **MOOT**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: February 8, 2007